UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 14-22788-CV-SEITZ/TURNOFF

ATLANTIC CASUALTY INSURANCE COMPANY,

    Plaintiff,

v.

LTA DISTRIBUTOR, LLC, ET AL.,

    Defendants.
_____/

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

THIS matter is before the Court on Plaintiff's Corrected Motion for Final Summary Judgment [DE-40], Defendants LTA Distributor, LLC and Gluri Investments, Inc.'s Response,[1] Defendants Alexander and Payne's Response [DE-49], and Plaintiff's replies [DE-51 & 54]. Plaintiff seeks a declaratory judgment declaring that its insurance policy does not provide coverage or a duty to defend Defendants LTA Distributor, LLC and/or Gluri Investments, Inc. for the lawsuit brought against these Defendants by Defendants Steven Alexander, Luvisca D. Payne, and Brian R. Payne as the result of an automobile accident that occurred on September 19, 2010. Because the accident falls squarely within the policy at issue's Products-Completed Operations Hazard Exclusion, Plaintiff's motion for summary judgment is granted.

---

[1] Defendants LTA Distributor, LLC and Gluri Investments, Inc.'s response is untimely. The Court twice denied their request for an extension for failure to comply with the Local Rules and to state any reason for the extension. These two Defendants ignored the Court's orders and filed their response to Plaintiff's Motion for Final Summary Judgment after the April 7, 2015 Court imposed deadline. Under such circumstances the Court usually would strike such a late filed document. However, given that it does not change the outcome, the Court will let the response remain. Counsel is on notice, however, that such blatant disregard of Court orders can and will lead to such sanctions in the future.

## I. Undisputed Material Facts[2]

Plaintiff is an insurance company that issued a Commercial General Liability Insurance policy to Defendant LTA Distributor, LLC, doing business as New Life Tires, under which Defendant Gluri Investments, Inc. may be an insured.[3] The policy contains an exclusion which states:

> THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.
>
> EXCLUSION- PRODUCTS-COMPLETED OPERATIONS HAZARD
>
> This endorsement modifies insurance provided under the following:
>
> COMMERCIAL GENERAL LIABILITY COVERAGE PART.
>
> This insurance does not apply to "bodily injury" or "property damage"' included within the "products-completed operations hazard".

(DE-33-2 at 82.) The relevant language of the Products-Completed Operations Hazard clause of the policy reads:

> "Products-completed operations hazard":
>
> a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:
>
> (1) Products that are still in your physical possession; or
>
> (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

---

[2] The parties do not dispute most of the material facts in this case.  Therefore, citations are included only where the parties have some dispute over the facts and to the specific language of the policy.

[3] The Court will jointly refer to LTA Distributor, LLC and Gluri Investments, Inc. as "Insureds."

    (a) When all of the work called for in your contract has been completed.

    (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

(DE-33-2 at 76.)

 The policy defines "your product" as:

"Your product":
a. Means:
  (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
   (a) You;
   (b) Others trading under your name; or
   (c) A person or organizations whose business or assets you have acquired; and

  (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products

b. Includes
  (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

  (2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

(DE-33-2 at76-77.) Under the policy, "your work" is defined as:

"Your work":
a. Means:

    (1) Work or operations performed by you or on your behalf; and
    (2) Materials, parts or equipment furnished in connection with such work or operations.
  b. Includes
    (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"' and
    (2) the providing of or failure to provide warnings or instructions.

(DE-33-2 at 77.)

  LTA Distributor, Inc. owns New Life Tires (New Life). New Life receives thousands of tires that are inspected. Those tires that are not suitable for use and sale are thrown away. Those tires that are suitable for use are kept and used in New Life's operations. The tire at issue in this matter was inspected and approved for sale by New Life employees as part of New Life's operations, despite the fact that it had defects that made it unsuitable for sale. The defects in that tire should have been visible to the New Life employees who inspected the tire. On June 18, 2010, Luvisca Payne (Ms. Payne) purchased four used tires from New Life, including the defective tire for Ms. Payne's vehicle. That same day, New Life installed the tires on Ms. Payne's vehicle. The used tires that New Life sold did not include any written warranty. The tires were sold "as is."

  On September 19, 2010, three months after the tires were purchased from and installed by New Life, Ms. Payne was driving her vehicle on Interstate 75 when the right rear tire failed. As a result, Ms. Payne lost control of her vehicle causing it to leave the highway and overturn. Two passengers in the vehicle, Janelle Sansion and Dehvohn L. Payne, were injured in the resulting accident and subsequently died. They are represented in this matter by their personal representatives, Steven Alexander and Luvisca D. Payne and Brian R. Payne (jointly, Claimants).

Subsequently, Claimants initiated an action against the Insureds, which is now in Collier County Circuit Court. Plaintiff filed this suit seeking a judgment declaring that Plaintiff has no duty to defend or indemnify Insureds as a result of the September 19, 2010 accident and declaring that the Claimants' claims against Insureds are excluded from coverage under the policy's Products-Completed Operations Hazard Exclusion.

## II. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001). Once the moving party demonstrates the absence of a genuine issue of material fact, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting* Fed. R. Civ. P. 56(e)). The Court must view the record and all factual inferences therefrom in the light most favorable to the non-moving party and decide whether "'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (*quoting Anderson*, 477 U.S. at 251-52)).

In opposing a motion for summary judgment, the non-moving party may not rely solely on the pleadings, but must show by affidavits, depositions, answers to interrogatories, and admissions that specific facts exist demonstrating a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A mere "scintilla" of

5

evidence supporting the opposing party's position will not suffice; instead, there must be a sufficient showing that the jury could reasonably find for that party. *Anderson*, 477 U.S. at 252; *see also Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## III. Discussion

Plaintiff asserts that it is entitled to summary judgment because the "Products-Completed Operations Hazard Exclusion" in the policy clearly and unambiguously excludes coverage for the accident. Defendants raise three arguments. The first two are based on ambiguity: (1) Claimants argue that the policy is ambiguous because the work at issue was not "completed" and (2) Insureds argue that the policy is ambiguous because the Products-Completed Operations Hazard Exclusion conflicts with the policy's definition of the term "occurrence." In the third argument, Insureds maintain that the Exclusion should not be enforced because Insureds believed that they were covered by the policy.

*The Policy Is Not Ambiguous*

An ambiguity exists when there is more than one reasonable interpretation of policy language - one affording coverage and one excluding coverage. *Lenhart v. Federated National Insurance Co.*, 950 So. 2d 454, 457 (Fla. 4th DCA 2007). Both sets of Defendants appear to misunderstand the meaning of the term "ambiguous" in the contract interpretation context. Neither set of Defendants have shown that a specific term of the policy is open to two or more reasonable interpretations. Moreover, Florida courts have held that similar language in products-completed operations hazard exclusions is not ambiguous and is enforceable. *Prieto v. Continental Insurance Co.*, 358 So. 2d 851 (Fla. 3d DCA 1978); *Sandpiper Construction Co. v. U.S. Fidelity & Guaranty Co.*, 348 So. 2d 379 (Fla. 2d DCA 1977). Consequently, Plaintiff is

6

entitled to summary judgment.

Despite the clear Florida law on this issue, Claimants assert that there is an ambiguity in the policy. Claimants acknowledge that the Products-Completed Operations Hazard Exclusion excludes work that has been completed but that an exception exists for work called for in a contract that has not been completed. Claimants assert that part of the contract between New Life and Ms. Payne required New Life to select and place an "appropriate and reasonably safe tire on the vehicle." Claimants contend that this work was never completed and, therefore, coverage exists under the policy because it is an exception to the exclusion. This is not an ambiguity in the policy. This is a matter of reading the entire policy as a whole. Unfortunately for Claimants, this application of the facts to the policy is not reasonable.

Claimants do not dispute that the Insureds selected and placed a tire on the vehicle. Nor have Claimants presented any evidence that work was ongoing – that New Life planned to continue to select an appropriate tire for Ms. Payne's vehicle. The work that was to be performed by New Life was performed – a tire was selected and placed on the vehicle. Ms. Payne's vehicle left the job site and the tires were put to use by Ms. Payne. New Life's work did not come with a written warranty and the tire was sold "as is." Thus, the work was completed but in an allegedly negligent fashion because the tire chosen by New Life was negligently selected. This is not the same as uncompleted work. *See Aerothrust Corp. v. Granada Insurance Co.*, 904 So. 2d 470, 472-73 (Fla. 3d DCA 2005) (holding that an allegedly improper inspection of a hoist that had occurred five months prior to the hoist's failure fell within the completed operations hazard of an insurance policy); *Associated Electric & Gas Insurance Services, ltd. v. Houston Oil & Gas Co.*, 552 So. 2d 1110, 1113 (Fla. 3d DCA 1989) (holding that

the negligent sale of propane in a defective gas tank fell within the competed operations hazard clause of an insurance policy). Moreover, the tire was put to its intended use – Ms. Payne drove on it for three months. Under the terms of the policy, work is deemed completed when the work done at a job site "has been put to its intended use." Thus, under the terms of the policy, the Insureds' work was completed and falls within the Products-Completed Operations Hazard Exclusion. Consequently, Plaintiff's policy does not provide coverage for Defendants' claims. Plaintiff has no duty to defend or indemnify Insureds.

As the final ambiguity argument, the Insureds, while accepting that the accident at issue here falls within the Products-Completed Operations Hazard Exclusion, argue that the Products-Completed Operations Hazard Exclusion conflicts with the term "occurrence" creating an ambiguity which must be resolved in favor of Insureds. The Products-Completed Operations Hazard Exclusion, however, does not conflict with the term "occurrence." The term "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." This is a definition, not a coverage section of the policy. The Products-Completed Operations Hazard Exclusion is a coverage portion of the policy, which specifically excludes certain types of accidents from coverage. Thus, there is no conflict. Moreover, other than making a general statement about the existence of a conflict, Insureds have failed to show how the two sections of the policy actually conflict or cause an ambiguity. Simply stating that there is a conflict or ambiguity does not create one. Consequently, the Insureds have failed to establish that there is a genuine issue of material fact that precludes summary judgment.

*Insureds' Expectations Do Not Trump the Policy Language*

While it is not entirely clear from their papers, it appears that Insureds also argue that a policy exclusion may be defeated if an "ordinary reader" would find the language ambiguous or if he believed the policy covered the incident at issue. However, the Florida Supreme Court has expressly rejected this doctrine of reasonable expectations. *Deni Associates of Florida, Inc. v. State Farm Fire & Casualty Insurance Co.*, 711 So. 2d 1135, 1140 (Fla. 1998) (holding that there is no need for the doctrine because Florida law construes any ambiguity in favor of coverage and to apply the doctrine to an unambiguous provision "would be to rewrite the contract and the basis upon which the premiums are charged" and can only lead to uncertainty and unnecessary litigation). Consequently, summary judgment is appropriate.

Accordingly, it is

ORDERED that:

1. Plaintiff's Corrected Motion for Final Summary Judgment [DE-40] is GRANTED.

2. Plaintiff's Motion for Final Summary Judgment [DE-38] is DENIED as moot.

3. The Court will enter a separate final judgment.

4. All pending motions not otherwise ruled upon are DENIED as moot.

5. This case is CLOSED.

DONE and ORDERED in Miami, Florida, this _1st_ day of June, 2015.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc: All Counsel of Record